UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,                                 Case No. 1:03-cr-194

v.                                           HON. JANET T. NEFF

KEVIN KARL SMITH,

        Defendant.

_____/


**<u>OPINION</u>**

      This matter is before the Court on Defendant Kevin Karl Smith's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt 142). The Government has filed a Response to Smith's § 2255 motion (Dkt 153), contending that nearly all of the grounds presented are procedurally barred, and even if considered on collateral review, are wholly without merit. Smith has filed a Reply (Dkt 159). Smith has also filed four supplemental motions: (1) a motion for leave to conduct discovery (Dkt 144); (2) a motion for leave to expand the record (Dkt 145); (3) Motion Requesting a Court Order Directing Former Counsel to Produce Items to Pro Se Litigant, for Cause Shown (Dkt 160); and (4) Motion for Partial Summary Judgment (Dkt 161).

      The Court has fully considered the parties' submissions and the record. Smith's motion for relief under § 2255 and his supplemental motions are properly denied.

I. BACKGROUND

This case has an extensive history in the trial court and on appeal.[1]  In August 2003, Smith was indicted on charges of murder-for-hire and firearm violations after he hired a hitman to murder his ex-wife, Monica Jarvis, because of an ongoing child custody dispute.  Although Smith thought he had a deal with his half-nephew, Michael Slaninka, to engage a hitman to murder Jarvis, Slaninka, had, in fact, reported Smith's scheme to federal agents and had agreed to serve as a confidential informant as part of his plea deal with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) on Slaninka's own pending federal explosives charges.  *See Smith,* 358 F. App'x at 636.

Over the course of several months, from March to July 2003, the agents assisted Slaninka in recording his conversations with Smith and helped Slaninka perpetuate the apparent conspiracy to murder Jarvis.  Slaninka acted as the middleman, "telling Smith that Kent West, an ATF special agent, would be the assassin."  *Id.*  "Smith eventually agreed to pay West $2,000 for the murder and mailed him a hand-drawn map of Jarvis's residence, photos of Jarvis, and $1,000 in cash.  Smith also promised to provide West with a firearm."  *Id.*

"On July 22, 2003, ATF agents arrested Smith after he dropped off a .25-caliber handgun for West at a predetermined location [in west Michigan].  The agents also executed a search warrant at Smith's home, where they found a .22-caliber pistol."  *Id.*

At his jury trial in December 2003, Smith testified and acknowledged his participation in the murder-for-hire scheme, but claimed that the government entrapped him, and that he never would

---

[1]The underlying facts set forth in the previous appeals are relied on herein.  *See United States v. Smith,* 358 F. App'x 634 (6th Cir. 2009); *United States v. Smith,* 191 F. App'x 383 (6th Cir. 2006).

have taken part in the scheme but for Slaninka's encouragement. *Id*. The jury returned a guilty verdict on all four counts: (1) interstate murder for hire; (2) felon in possession of a firearm; (3) possessing a firearm with the serial number removed; and (4) possessing a firearm in furtherance of a crime of violence. Smith moved for judgment of acquittal and for a new trial. The trial court denied both motions.

Smith was sentenced to 240-months' imprisonment, including concurrent 120-month sentences for murder for hire and being a felon in possession of a firearm, followed by two consecutive 60-month sentences for the remaining firearm convictions. In July 2006, the Sixth Circuit Court of Appeals affirmed Smith's conviction but remanded his case for resentencing under *Booker*, 543 U.S. 220 (2005), in light of the now advisory sentencing guidelines. *Smith,* 191 F. App'x 383.

On resentencing, the court imposed the same sentence under the advisory guidelines. Smith appealed, and in December 2009, the Sixth Circuit affirmed his sentence. *Smith,* 358 F. App'x 634. Smith's petition for writ of certiorari was denied by the United States Supreme Court in June 2010 (Dkt 122).

Smith thereafter filed several *pro se* motions in the district court: (1) motion to produce information about the makeup of the Grand Jury seated in Grand Rapids, Michigan in August 2003, including the names and qualifications of the grand jurors seated (Dkt 124, 132); (2) Motion for Access to Defendant's Attorneys Records and request for transcripts free of charge (Dkt 129); and (3) a motion amending his motion for production of certain Grand Jury related materials, to obtain records of each grand juror's attendance and the dates and duration of sessions, all visual or audio evidence, and the transcripts or statements of nine purported witnesses (Dkt 132). The motions were

denied by the magistrate judge on January 24, 2011 (Dkt 137). Smith has now filed this § 2255 motion and related motions for discovery and to supplement the record, and for partial summary judgment.

## II. LEGAL STANDARDS

A prisoner who moves to vacate his sentence under 28 U.S.C. § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, the movant must demonstrate "the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)). "[W]hen a federal statute, but not the Constitution, is the basis for postconviction attack, collateral relief from a defaulted claim of error is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process." *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows either (1) "cause" excusing his procedural default and "actual prejudice" resulting from the errors of which he complains, or (2) "actual innocence." *Massaro v. United States,* 538 U.S. 500, 504 (2003); *Bousley v. United States,* 523 U.S. 614, 622 (1998); *United States v. Frady,* 456 U.S. 152, 167-68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro,* 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255,

whether or not the movant could have raised the claim on direct appeal. *Id.*

In an action to vacate or correct a sentence, a court is generally required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the movant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999)).

For the reasons that follow, the record in this case, and additional documents proffered, conclusively show that Smith is not entitled to relief under 28 U.S.C. § 2255. Accordingly, no evidentiary hearing is required to resolve the merits of the pending motion.

### III. ANALYSIS

In his § 2255 motion and 71-page brief,[2] Smith sets forth twelve specific grounds for relief, although Smith additionally advances numerous subarguments. Nearly all of the issues raised by Smith are procedurally defaulted, and to the extent they are not, Smith's arguments have no merit.

### A. Grounds Raised

Smith states twelve grounds for relief in § 2255 motion:

**(1)** Smith's rights to the due process of law were violated (when the sentencing court applied consecutive sentences under 18 U.S.C. § 922(k) and § 924(c) for only one substantive offense);

_____

[2]Smith's page numbers in his memorandum/brief and his reply do not coincide with the docket page numbers. The references herein are to the docket page numbers.

**(2)** ineffective assistance of counsel for failure to raise the issues in grounds (1) and (3) through (12) on direct appeal;

**(3)** Smith was denied the due process of law under the Fifth Amendment (based on "sentencing manipulation" or "sentencing entrapment" because government agents manipulated the firearm "factor" for the purpose of increasing Smith's Guideline offense level and directed Smith to deliver the firearm);

**(4)** Smith was denied due process of law and a fair trial under the Fifth and Sixth Amendments (because it was plain error for the jury to find that Smith committed § 924(c), when it was impossible for him to commit the "in furtherance of" element given the controlled situation involving police and agents);

**(5)** Smith is actually innocent of 18 U.S.C. § 922(g) (because his rights to bear firearms had been restored);

**(6)** United States Sentencing Guidelines (U.S.S.G.) § 2E1.4 is unconstitutional in general and as applied (because it posits base levels that place all offenders above the statutory maximum of 18 U.S.C. § 1958 regardless of offense characteristics);

**(7)** Smith's due process rights were violated as outlined in *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States,* 405 U.S. 150 (1972), and the Jenks Act (because the government failed to produce exculpatory evidence, including ATF Field Reports, interview records (notes, video or audio), and a complete list of persons interviewed, and defense counsel never received evidence that Smith's fingerprints were not on the gun or packaging);

**(8)** Smith did not receive the constitutionally required effective assistance of counsel at critical stages of his case (because counsel failed to investigate potential testimony from

Smith's wife and sister that Slaninka's gun was stored in Smith's attic; counsel failed to call witnesses Terry Claiment and Cody Stall, who could have testified that they used to shoot the firearm in question with Slaninka; and counsel failed to call Smith's wife and sister who would have testified that Smith had picked up the package from the shed, not the attic);

**(9)**  Smith's Sixth Amendment right to confront a witness was harmed, *Melendez-Diaz v. Mass.*, 557 U.S. 305 (2009), (because the Government's expert witness reports were offered at trial without allowing confrontation of that expert, and no reports were provided before trial);

**(10)**  Smith's rights to a fair trial under the Sixth and Fourteenth Amendments and to due process were violated (when the prosecutor inappropriately brandished an ATF form 4473 before the jury, without the form being verified or entered into evidence);

**(11)**  the prosecutor committed misconduct when he testified at trial (that Smith threatened someone with a gun in the past and choked his sister violently in the past, and then re-raised this in closing argument); and

**(12)**  Smith is actually innocent as to the enhancement for "obstruction of justice" (and the court erroneously increased Smith's sentence for "obstruction of justice" because he took the stand and testified to what he knew to be the truth).

The Government's Response organizes Smith's claims into six categories, which the Court finds reasonable based on the law and arguments.[3]  The Court considers Smith's claims accordingly.

---

[3]Smith's objection to the reorganization is without merit since all grounds raised are appropriately addressed.  Moreover, Smith's otherwise disjointed arguments and excerpted quotations of authority make a reasoned legal analysis difficult.

1. Sentencing Claims

Smith argues that the sentencing court improperly applied consecutive sentences under 18 U.S.C. § 922(k) and § 924(c) for only one substantive offense (Ground 1) and that U.S.S.G. § 2E1.4 unconstitutionally posits base levels that place all offenders above the statutory maximum of 18 U.S.C. § 1958 regardless of offense characteristics (Ground 6). These claims fail.

First, Smith wrongly asserts that grounds (1) and (6) were not raised on direct appeal. To the contrary, the Sixth Circuit rejected these overall sentencing claims of error, stating:

> Smith argues that the district court erred under *Apprendi v. New Jersey,* 530 U.S. 466 [] (2000), by imposing a sentence that was greater than the statutory maximum for his murder for hire conviction. Smith mistakenly assumes that the 120-month statutory maximum for his murder for hire conviction (Count I) bars the district court from stacking two sixty-month sentences for possessing a firearm with a removed serial number (Count III) and in furtherance of a crime of violence (Count IV) onto his murder-for-hire sentence. The district court permissibly exercised its discretion in imposing a consecutive sentence for possessing a firearm with a removed serial number, 18 U.S.C. § 3584(a), and was statutorily required to impose a consecutive sentence for possessing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A). Under USSG 5G1.2(d), the district court had authority to stack the sentences on Counts I (120 months) and III (60 months) since the combined total did not exceed the maximum Guidelines sentence (188 months). Following the statutorily mandated addition of sixty months for Count IV, the district court properly arrived at a total sentence of 240 months. *See* 18 U.S.C. § 924(c)(1)(A).

*Smith,* 191 F. App'x at 388-89.

Likewise, on appeal following his resentencing, the Sixth Circuit again addressed these sentencing claims:

> The record also shows that the [district] court considered and rejected Smith's objection to the "stacking" of consecutive sentences onto his murder-for-hire sentence. The guidelines call for a range of 151 to 188 months on the murder-for-hire conviction, and the statute caps the sentence at 120 months. *See* 18 U.S.C. § 1958(a); USSG § 5G1.1. At resentencing, as at the first sentencing hearing, the district court imposed the maximum 120-month sentence, plus a concurrent 120-month sentence for being a felon in possession of a firearm and two consecutive 60-month sentences for the remaining firearm convictions, resulting in a total prison sentence of 240

months. The court noted that the Sixth Circuit had approved the same consecutive sentences on Smith's first appeal, *see Smith*, 191 F[.] App'x at 388-89, an issue left untouched by *Booker, see Oregon v. Ice*, ___ U.S. ___, 129 S. Ct. 711, 716-18 (2009), and appropriately declined to revisit Smith's objection, Resent. Tr. at 4. The court had ample discretion to take this path. *See United States v. Haynes,* 468 F.3d 422, 426 (6th Cir. 2006).

*Smith,* 358 F. App'x at 637-38.

As the Government notes, Smith cannot now, on collateral attack, relitigate issues already rejected by the court of appeals. *See Oliver v. United States,* 90 F.3d 177, 180 (6th Cir. 1996). To the extent that Smith attempts to circumvent this rule by arguing that there has been an intervening change in the law pursuant to *Abbott v. United States,* ___ U.S. ___, 131 S. Ct. 18 (2010), his argument has no merit. *Abbott* provides no basis for relief, and in fact supports, the consecutive sentences imposed by the district court.

Citing the "except clause" of § 924(c)(1)(A)[4] at issue in *Abbott*, Smith argues that the district court overlooked this "'safety-valve' type provision" when it applied the sentences consecutively (Def. Br., Dkt 143 at 10). This argument has no merit. In *Abbott*, the Court held that the defendants *were subject to consecutive sentences* for possessing a firearm in furtherance of drug trafficking crimes despite higher minimum sentences for separate counts of conviction. "[A] defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." *Abbott,* 131 S. Ct. at 23. The Court soundly rejected the defendants' arguments that they were exempt from punishment under § 924(c) because they were sentenced to greater mandatory

---

[4]Under the "except" clause, "a minimum term of five years shall be imposed as a consecutive sentence '[e]xcept to the extent that a greater minimum sentence is otherwise provided by [§ 924(c) itself] or by any other provision of law.'" *Abbott,* 131 S. Ct. at 22; *see* 18 U.S.C. § 924(c)(1)(A).

minimum prison terms for convictions on other counts charging different offenses. "The 'except' clause covers only conduct offending § 924(c)," i.e., possessing a firearm in connection with a crime of violence or drug-trafficking crime. *Abbott,* 131 S. Ct. at 22-23, 31 n.9. The Court reasoned that the "except clause" is properly interpreted to provide punishment *in addition to* the penalty for the predicate offense, in keeping with the longstanding intent of Congress. *Id.* at 27, 29.

Smith nonetheless argues that it was plain error for the court to sentence him to consecutive sentences for possession of a firearm with the serial number removed, 18 U.S.C. § 922(k), and possession of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c), where both offenses involved the same firearm and the same underlying predicate offense (Def. Br., Dkt 143 at 9). Again, contrary to Smith's argument, *Abbott* provides no support for his contention. The no-stacking instruction in the "except clause" applies only where a different statute punishes conduct offending § 924(c). The *Abbott* Court noted that "a statute will fit the bill if it provides a greater mandatory minimum for an offense that embodies all the elements of a § 924(c) offense." *Abbott,* 131 S. Ct. at 30 n.8. There is no contention that § 922(k) so qualifies.

Defendant's reliance on *United States v. Johnson* 25 F.3d 1335, 1339 (6th Cir. 1994) (en banc), *rev'd on other grounds*, 529 U.S. 53 (2000), is misplaced. In *Johnson*, the court "held that a defendant may not be sentenced for two § 924(c) convictions for the possession of one or more firearms during a drug trafficking crime when the predicate offenses involve simultaneous possession of different controlled substances." *United States v. Graham,* 275 F.3d 490, 521 (6th Cir. 2001) (citing *Johnson*, 25 F.3d at 1338). Unlike the defendant in *Johnson*, Smith did not receive consecutive sentences for multiple violations of § 924(c). "The fact that a gun is stolen or has an altered or obliterated serial number is entirely separate and distinct from the defendant's mere use

or possession of the gun." *United States v. Smith,* 196 F.3d 676, 683 (6th Cir. 1999). Smith has shown no basis for extending the specific analysis in *Johnson* to the distinct firearm offenses in this case.

Smith further argues that Amendment 599 to the sentencing Guidelines "disallowed the kind of 'double-counting' of the *same* firearm for the *same* offense" (Reply, Dkt 159, at 4). This argument fails. First, "nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process." *Grant,* 72 F.3d at 506. "[N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver." *Id.* Smith's Guidelines claim is waived. Second, Smith has not shown that his § 922(k) sentence is a prohibited "enhancement" for the same weapon that forms the basis of the § 924(c) conviction (Def. Br., Dkt 143 at 12-13). To the extent that Smith purports to advance arguments in Ground 6, that U.S.S.G. § 2E1.4 is unconstitutional, those arguments lack any basis in fact or law. Smith was not improperly sentenced above the ten-year statutory maximum under 18 U.S.C. § 1958 by virtue of the Guidelines base offense level of 32.

## 2. Murder Weapon Evidence

With respect to several grounds for relief, Smith claims error on the basis of Slaninka's alleged prior possession of the firearm Smith delivered to the hitman to kill Jarvis: (1) "outrageous government conduct," i.e., "sentencing entrapment" by the government (Ground 3); (2) Smith is actually innocent of possession of a firearm in the furtherance of a felony because of impossibility (Ground 4); and (3) ineffective assistance of counsel for failing to interview five witnesses who

would have testified that Slaninka was the one who originally acquired, and had used, the intended murder weapon (Ground 8). The Court finds no basis for relief on these grounds.

Smith's arguments are based on his theory that he was the target of a government sting and that the government manipulated from the outset to prime Smith for a firearms enhancement, as shown by the fact that Slaninka, the government's "agent," had obtained the firearm and obliterated the serial numbers long before the events at issue (Def. Br., Dkt 143 at 17). Smith asserts that Slaninka knew a weapon was available to Smith, and the requested witnesses would have corroborated that Slaninka purchased and modified the .25-caliber firearm (*id.* at 19). He argues that the Government thus cannot claim any predisposition on Smith's part as to the § 922 and § 924 offenses (*id.*). Smith further argues that the government's conduct constitutes a defense of sentencing manipulation or sentencing entrapment, which justifies vacating his § 922 and § 924 convictions (*id.* at 17, 22).

Smith's argument that the Government failed to disprove his entrapment defense was presented in his direct appeal and rejected. *Smith,* 191 F. App'x at 386-87. He cannot relitigate that issue here. *See Oliver,* 90 F.3d at 180. Smith cites no evidence or authority supporting his remaining arguments concerning sentencing manipulation or sentencing entrapment, and the Court finds no basis for relief under § 2255 with respect to Ground 3.

"Several circuits have explained that 'sentencing entrapment' focuses on the defendant's lack of predisposition to commit the greater offense, while 'sentencing manipulation' focuses on whether the government's conduct is so outrageous that it offends the due process requirement of fundamental fairness." *Hall v. United States*, No. 97-5936, 172 F.3d 872 (Table), 1998 WL 887276, at *2 (6th Cir. Dec. 9, 1998). Regardless of this distinction, the Sixth Circuit has declined to

recognize a defense of either sentencing entrapment or sentence manipulation. *United States v. Guest,* 564 F.3d 777, 781 (6th Cir. 2009).

Smith's argument appears to be one of "sentencing manipulation" rather than "sentencing entrapment." Regardless, his claim is without merit. Smith testified at trial and admitted that he engaged a hitman to kill his ex-wife. *See Smith,* 191 F. App'x at 386. His delivery of the gun was an act furthering his efforts to have his ex-wife killed, and as the Government argues, merely proves that he was guilty of the crime. The government's failure to arrest him *before* he supplied the gun to the hitman cannot be found to constitute "sentencing manipulation" on the circumstances presented.

Likewise, Smith's argument that he is actually innocent[5] of possession of a firearm in the furtherance of a felony because of impossibility (Ground 4) has no merit. Smith admittedly undertook steps to have a hitman kill his ex-wife. He possessed the gun. Contrary to his argument, the government did not so strictly control this entire scenario such that the "in furtherance of" element of § 924(c) was an impossibility. Smith's alternative argument, that "furtherance was impossible" because the government would not have allowed the consummate act (killing) to occur, is equally without merit. The death of another is not necessary for a conviction under 18 U.S.C. § 1958(a).

Similarly, the fact that Slaninka previously possessed the gun does not render Smith's commission of the crime impossible. Smith's own conduct provided the basis for his conviction

---

[5]Smith's argument appears to be one of legal insufficiency, rather than actual innocence, and is addressed as such. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623-24. Moreover, Smith's purported claim of actual innocence fails because he has set forth no reliable evidence that was not presented to the jury at trial. *See Calderon v. Thompson,* 523 U.S. 538, 559 (1998).

under § 924(c). Smith's characterization of Slaninka as a "government agent" who suggested the gun to be used by Smith, does not alter this result. Smith's claim that he is innocent of possession of a firearm in furtherance of a crime of violence, § 924(c), based on impossibility, fails.

In this same vein, Smith claims ineffective assistance of counsel based on his attorney's failure to interview five witnesses[6] who would have testified that Slaninka was the one who originally acquired the intended murder weapon and he had used it previously (Ground 8). A movant claiming ineffective assistance of counsel must establish two elements: (1) that defense counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the deficient performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Smith has failed to meet the standard for showing ineffective assistance of counsel. The evidence that Slaninka previously possessed the gun was presented at trial. Defense counsel elicited this evidence on cross-examination of Slaninka, who testified that he was the original owner of the firearm, he had obtained the firearm for Smith about eight or nine years ago, and he delivered it to Smith on the back porch of Smith's mother's house (Tr. II, Dkt 83, at 22). Additional evidence on the points raised by Smith is not relevant to any outcome now at issue, e.g., the fact that Slaninka modified the firearm, that it was his or that he used it previously (Reply, Dkt 159 at 13). Smith has failed to show that counsel's failure to call additional witnesses on these points was objectively

_____

[6]Smith identifies these witnesses as his wife, his sister, Terry Claiment, Mike Perren, and Cody Stall.

unreasonable. Moreover, Smith has failed to show a reasonable probability that any additional, and likely cumulative, evidence would result in a different outcome.

### 3. Smith's Right to Bear Firearms

Smith is not entitled to relief on the ground that his right to bear arms was restored by the states of Michigan and North Carolina, and thus, he was "actually innocent" of being a felon in possession (Ground 5). As the Government points out, Smith failed to raise this argument on direct appeal, and therefore it is procedurally barred. Claims not raised on direct appeal generally may not be raised on collateral review absent a showing of either cause and prejudice or actual innocence. *Massaro,* 538 U.S. at 504; *Bousley,* 523 U.S. at 622. Contrary to his argument against procedural default (Reply, Dkt 159 at 7), Smith has not met this standard.

Regardless, as the Government further points out, Smith's argument is contrary to his testimony at trial. Smith testified that he could not have possessed a firearm because he knew he had a prior felony, and he had made sure that all of his firearms were no longer in his house (Tr. III, Dkt 85, at 45-46, 75). Additionally, the Court is not persuaded by Smith's argument that his rights had been restored; he provides no evidence to support this conclusion (Def. Br., Dkt 143, at 26-30). Even if Smith's *civil rights* had been restored at the time he possessed the firearm as he argues, he has not shown that his right to possess *firearms* had been restored pursuant to MICH. COMP. LAWS § 750.224f. *See United States v. Scantland,* Nos. 2:04-CR-80773, 2:08-CV-13097; 2010 WL 6571943, at *17-18 (E.D. Mich. 2010). Smith's arguments as to North Carolina fail for the same reasons.

### 4. Exculpatory Evidence

Smith contends that there are several exculpatory items of evidence that were never turned

over to him, including ATF field reports, a lab report (showing Smith's fingerprints were not on the gun delivered for the hitman or on the packaging), interview records, and a complete list of persons interviewed (Ground 7), violating his due process rights outlined in the Jenks Act (18 U.S.C. § 3500) and in *Brady*, 373 U.S. 83 and *Giglio,* 405 U.S. 150.  Pursuant to *Brady* and *Giglio,* "the prosecution [is required] to provide criminal defendants with evidence in the government's possession that could be considered exculpatory or that could serve to impeach the credibility of prosecution witnesses." *United States v. Williams,* 612 F.3d 500, 503 (2010).

Smith further contends that his counsel was ineffective for not obtaining the purportedly missing evidence (Ground 8).  Smith also contends his Sixth Amendment right to confrontation was violated because he wished to cross-examine the lab technician who created the lab report (Ground 9).  Smith has failed to show he is entitled to relief on any of these grounds.

The Government responds that, contrary to Smith's assertions, the Government provided him copies of the audio tapes in question and disclosed the findings in the lab report to him (Govt. Resp., Dkt 153 at 16, citing Initial Discovery Order, Dkt 13).  The Government asserts that there are no missing tapes, and therefore no violation of the Government's obligations under the discovery rules. Further, Smith acknowledged on the witness stand that he had received all the recordings prior to trial (Tr. III at 94).  And ATF Special Agent Michael Marquardt testified at trial that he preserved the contents of the package delivered to the hitman for "fingerprints," including the firearm found inside, and that "the lab did not" find any usable fingerprints on the firearm (Tr. I at 94).  Thus, counsel cannot be ineffective for failing to inquire about tapes or reports known or already provided to the defense.

In light of these circumstances, Smith had the opportunity to call and confront the lab

technician who created the report that stated there were no fingerprints on the firearm.  His claim

that his confrontation rights were violated in this regard is without merit.  In any event, because

there were no fingerprints on the gun, any error would not have affected the trial outcome.  Contrary

to Smith's contention, calling the lab technician was not key to discrediting Government assertions

that Smith was associated with a firearm that was contained in a bag, and the associated packaging

(Def. Br., Dkt 143 at 54).

In reply, Smith disputes the Government's assertions with respect to the audio tapes and lab

report.  Smith asserts to the contrary that the Government did not consolidate 24 tapes into 13; the

transference was not verbatim; and long parts of conversations were omitted from the tapes (Reply,

Dkt 159 at 12).  He argues that the Government's failure to disclose the complete, correct, and

unmanipulated audio tapes of telephone conversations is a clear *Brady* violation.  He likewise argues

that disclosure of the lab report at the time of trial is not the disclosure compelled by *Brady* (*id.* at

12-13).

"A *Brady* claim contains three elements: (1) the evidence 'must be favorable to the accused'

because it is exculpatory or impeaching; (2) the State must have suppressed the evidence, whether

willfully or inadvertently, and (3) the evidence must be material, meaning 'prejudice must have

ensued' from its suppression."  *Webb v. Mitchell,* 586 F.3d 383, 389 (6th Cir. 2009) (quoting

*Strickler v. Greene,* 527 U.S. 263, 281-82 (1999)).  Smith's assertions and arguments wholly fail to

establish these elements with respect to the audio tapes and lab report, either factually or legally.

Smith provides nothing more than bare factual assertions without adequate evidence or

documentation to reach his unsupported conclusions.  Not only has he not established a *Brady*

violation, but he also has failed entirely meet the standards for relief under § 2255 with respect to these claims.

Smith also argues in reply that (1) he has never received approximately 200 pages of ATF field reports; and (2) the interview records and interview lists have never been provided. He asserts the failure to provide these documents is a "clear *Brady/Giglio* violation" (Reply, Dkt 159 at 11). For the same reasons discussed above, these claims fail. He has not shown a meritorious claim, either factually or legally.

### 5. Prosecutorial Misconduct

Smith alleges that the Government committed prosecutorial misconduct by (1) "brandishing" an ATF form 4473 (application to purchase a firearm) before the jury that was not verified or in evidence (Ground 10) (Def. Br., Dkt 143 at 56); and (2) "testifying" concerning facts not in evidence regarding Smith threatening someone with a gun in the past and choking his sister violently, and then re-raising this in closing argument (Ground 11) (Def. Br., Dkt 143 at 62, citing Tr. III at 104).

As with other claims discussed above, Smith failed to raise either of these issues on appeal; therefore, they cannot be brought here. *See Massaro,* 538 U.S. at 504; *Bousley,* 523 U.S. at 622. In any event, neither of Smith's claims of misconduct has merit.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). "Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999) (abrogated on other grounds).

The Sixth Circuit employs a two-part test to determine whether prosecutorial misconduct warrants a new trial, first considering whether the prosecutor's conduct and remarks were improper, and, second, weighing four factors to determine whether the impropriety was flagrant and thus warrants reversal. *Girts v. Yanai,* 501 F.3d 743, 758-59 (6th Cir. 2007). The four factors include: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong. *Id.* at 759 (citation omitted).

During the cross-examination of Smith, the Government showed a form 4473 to Smith, which was marked as Exhibit 45 (Tr. III at 72). At the conclusion of Smith's testimony, the Court asked counsel whether either party wished to admit Exhibit 45 into evidence, and neither did (*id.* at 132-33). Smith now contends that the Government committed prosecutorial misconduct because it did not move for the admission of Exhibit 45. However, the Government's cross-examination concerning Smith's false statement on this document was not improper, and there is no requirement that the Government move it into evidence. Moreover, defense counsel requested that the document not be admitted into evidence (*id.*).

As to Smith's claim that the prosecutor "testified" during the trial when he improperly introduced versions of an argument that Smith had with his sister, Minnie Lou, and with regard to the facts of a prior conviction (Def. Br., Dkt 143 at 59), Smith's characterization of the prosecutor's conduct is inaccurate. The record indicates that the prosecutor's references to Smith's past violence and prior conviction was in cross-examination of character witnesses (*see* Tr. III at 26-41). The questions at issue cannot reasonably considered "testimony," and they provide no legitimate basis

19

for a claim of prosecutorial misconduct.[7]  Smith has failed to show that the prosecutor's conduct was improper or flagrant.  In any event, any cited statements by the prosecutor are not "so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *See Caldwell,* 181 F.3d at 736.  In most instances, the prosecutor's questions and comments regarding Smith's violent past only prompted the witnesses' further support and defense of Smith.  For the same reasons, Smith's claim that his counsel was ineffective for not objecting to the supposed "testimony" is without merit.

### 6.  Obstruction of Justice

Smith contends that the district court erred in imposing a sentencing enhancement for the obstruction of justice because the court failed to conduct a separate evidentiary hearing to determine if Smith obstructed justice by perjuring himself during his trial (Ground 12).  Again, as discussed above, Smith failed to raise this issue on appeal, therefore, he cannot raise it on collateral review. *See Massaro,* 538 U.S. at 504; *Bousley,* 523 U.S. at 622.

In any event, Smith's claim is without merit.  The district court was not required to conduct a separate hearing on Smith's obstruction of justice because the court presided over Smith's trial at which Smith testified.  The court's findings were based on the trial and Smith's testimony:

> The government contends that Mr. Smith perjured himself in two respects. First, they contend he perjured himself when he testified that he was unaware that a bag he contends that he picked up from a storage shed had a .25 caliber pistol in it that was intended to used to kill his ex-wife. Mr. Smith's testimony could only be described as absolutely, flat out preposterous on that point. It was soundly rejected by the jury, and it clearly was perjurious.

---

[7]Smith's citation to the trial court's admonishment to the prosecutor to not testify (Def. Br., Dkt 143 at 62, citing Tr. III at 104) appears to be wholly unrelated to the questioning about Smith's violent past and prior conviction, which is the basis of his prosecutorial misconduct claim, further undermining Smith's contentions.

Secondly, the government contends that he perjured himself when he testified that he didn't possess a .22 caliber handgun that was found in his closet when his property was searched. The Court further finds that he perjured himself when he said that while it might have been his gun at one point, that he had given it to his wife, and his wife brought it back to the house, and he didn't know it was in the house. That was about as preposterous as all the rest of Mr. Smith's testimony in this case.

(Sent. Tr., Dkt 82 at 12-13.)

The court stated that for these two reasons, the court would apply the two-level enhancement for obstruction of justice (*id.* at 13). Contrary to Smith's argument, he is not entitled to relief on the ground that the court failed to make independent findings to support a finding of perjury. *See United States v. Dunnigan,* 507 U.S. 87, 96-97 (1993). Further, this Court finds no support for Smith's claim that he is "actually innocent" of obstruction of justice.

### 7. Remaining § 2255 Contentions

To the extent Smith advances additional subarguments or contentions that are not specifically addressed, the Court determines they are without merit or not material to the disposition of the claims set forth in his § 2255 motion, even granting him the liberal construction of his pleadings and arguments to which he is entitled. *See Martin v. Overton,* 391 F.3d 710, 714 (6th Cir. 2004) (liberal construction to which pro se litigants are entitled is not boundless).[8] Likewise, any additional claims of ineffective assistance of counsel that he blanketly raises in Ground 2, fail on the basis that his underlying claims of error are without merit.

---

[8]For example, in his Reply (Dkt 159 at 3), Smith takes issue with the Government's addition of an explanatory parenthetical in stating that "Smith 'confirmed that he had a .25 [caliber handgun] from years back.'" Smith fails to show how this is germane to the outcome of any claim presented.

### B. PENDING MOTIONS

Having fully considered Smith's extensive claims in his § 2255 motion, his memorandum in support, and his Reply, as well as the record, this Court determines that his pending motions are properly denied.

### 1. Discovery Motion

Smith moves for leave to conduct discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules Governing § 2255 Proceedings") (Dkt 144). "For good cause shown, the district court has the discretion to permit discovery in a habeas proceeding." *Franco v. United States*, No. 98-5702, 187 F.3d 635 (Table), 1999 WL 623354, at *2 (6th Cir. 1999) (citing Rule 6(a)). "[T]o be permitted discovery, the habeas petitioner must present specific allegations which give reason to believe that, if the facts are fully developed, he may be entitled to habeas relief." *Id.* (citing *Lynott v. Story,* 929 F.2d 228, 232 (6th Cir. 1991)).

Smith seeks discovery pertaining to his *Brady*, *Giglio* and Jenks Act claims, including: (1) eleven allegedly remaining tapes of recorded conversations he contends the Government did not provide to him at the time of trial; (2) an official copy of the lab report, presumably on the absence of fingerprints on the gun and package, so he can be assured that the copy he received is accurate and complete; and (3) the Government's confidential informant file to rectify purported earlier discovery irregularities. He also seeks minutes of the Grand Jury proceedings (1) to determine whether the prosecutor testified incorrectly regarding Smith's prior altercation with his sister and/or his prior CCW (carrying a concealed weapon) offense, and with regard to the contents of the tapes;

and (2) to obtain the testimony of the prosecutor or any other government official for the purpose of an indictment against Smith.

Smith has failed to show good cause for any of the requested discovery. As discussed *supra*, after full consideration, the Court found no basis for relief with regard to Smith's *Brady*, *Giglio* and Jenks Act claims, and Smith has not established any basis for concluding that the requested discovery would, in fact, have any bearing on the analysis or outcome of this case.

The Court also notes that Smith has previously filed several *pro se* motions for discovery in this case: (1) motion to produce information about the makeup of the Grand Jury (Dkt 124); Motion for Access to Defendant's Attorneys Records and Request for Transcripts (Dkt 129); and motion amending motion seeking production of certain Grand Jury related materials (Dkt 132), all of which were denied because Smith failed to make the requisite showing justifying such discovery. His instant discovery requests continue to be nothing more than general, blanket requests in an effort to search for, or rule out, possible defects in his case.

## 2. Expansion of the Record

Smith also moves for Leave to Expand the Record Pursuant to Rule 7 of the Rules Governing § 2255 Cases (Dkt 145). He seeks entry of the following documents in the record: (1) affidavit of his former counsel; (2) his own affidavit; and (3) the unofficial copy of the lab report that Smith received through his Freedom of Information Act (FOIA) request.

Rule 7 authorizes the Court to expand the record under certain circumstances:

(a) **In General.** If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion. The judge may require that these materials be authenticated.

(b) **Types of Materials.** The materials that may be required include letters predating the filing of the motion, documents, exhibits, and answers under oath to

written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

(c) **Review by the Opposing Party.** The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

"The purpose of this rule is not only to enable the district court to dispose of petitions not dismissed on the pleadings without the time and expense of an evidentiary hearing, but also to assist the district court in determining whether an evidentiary hearing is warranted." *Young v. United States,* 2:08-CV-707, 2011 WL 4348127, at *9 (S.D. Ohio Sept. 16, 2011) (citing *Blackledge v. Allison,* 431 U.S. 63, 81 (1977)). "The decision whether to order an expansion of the record under Rule 7 falls within the sound discretion of the district court." *Id.* (citing *Ford v. Seabold,* 841 F.2d 677, 691 (6th Cir. 1988)).

As an initial matter, the documents presented are not authenticated or in the proper format. The affidavits sought to be admitted are not notarized, and counsel's "affidavit" is merely a signed statement, not under oath. Regardless, having reviewed the documents in light of the claims and issues presented, the Court finds that they are not material to the resolution of the Smith's § 2255 motion and do not establish the need for an evidentiary hearing. *See* RULES GOVERNING § 2255 PROCEEDINGS, Rule 8(a). Under these circumstances, the Court finds no basis for granting the motion to expand the record.

### 3. Production by Former Counsel

On October 22, 2012, Smith filed a Motion Requesting a Court Order Directing Former Counsel to Produce Items to Pro Se Litigant, For Cause Shown (Dkt 160). "Smith seeks the following documents:

1. Copy of jury instructions;

2. Copies of all stipulations that were signed in the case by counsel;

3. Tape or transcripts of related State of Michigan St. Joseph County, for the reason that testimony of police is different than it was in federal court;

4. Voir Dire transcripts;

5. The jury verdict and form used;

6. Copy of the local rules of criminal and civil procedure. . . .

7. Copies of or originals of all tanglible [sic] documentary, photographic, audio, and video evidence that was part of discovery;

8. Opening statement transcripts;

9. Closing argument transcripts;

10. Transcripts of the singular sidebar conference which occurred during trial[.]" *Id.* at 1-2.

As justification for his blanket request, Smith merely states that he needs these documents and items to successfully litigate the matters in his collateral challenge to his criminal conviction (*Id.* at 2). As authority for his request, he cites *United States v. Oakley,* No. 3:07-CR-88, 2008 U.S. Dist. Lexis 78721, at *13 (E.D. Tenn. Oct. 8, 2008), in which the court addressed the return of documents to a client following the termination of his attorney's representation, pursuant to the Tennessee Rules of Professional Conduct. The defendant's former attorney was suspended from the practice of law, and the defendant moved for an order directing the attorney to consult with the defendant's current counsel and to provide current counsel with a copy of the defendant's file. *Id.* at 8, 11. As grounds for his motion, the defendant stated that current counsel had attempted to speak with the former attorney, but that the former attorney was unwilling to discuss the matter with them out of a fear of violating his suspension order. *Id.* at 11. Citing the professional conduct rules, the

court observed that the former attorney had an ethical duty to turn over any case related materials to Oakley, or, in that case, his new attorneys. *Id.* at 13-14.

The circumstances and authority cited in *Oakley* are not analogous to those here, and they do not support granting the blanket, belated request for the order Smith seeks to litigate his § 2255 motion. Smith's motion lacks sufficient factual or legal justification. Having fully considered the claims raised by Smith, the Court finds no particularized need for these materials in light of the claims and, moreover, no basis for ordering the production of the numerous documents from former counsel. The Court denies the motion.

### 4. Motion for Partial Summary Judgment

On November 1, 2012, Smith filed a Motion for Partial Summary Judgment on Ground 5 of his habeas petition (Dkt 161), asserting that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Smith asserts that his right to bear firearms was restored in at least 1996 in all states, based on the undisputed facts in his affidavit. Even disregarding the question of the procedural appropriateness of his motion, the Court concludes he is not entitled to summary judgment with respect to Ground 5 of his petition, for the reasons stated *supra.* This motion is denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the Court must also assess whether to issue a certificate of appealability (COA) to Smith. RULES GOVERNING § 2255 PROCEEDINGS, Rule 11. The Court must review the issues individually. *Slack v. McDaniel*, 529 U.S. 473 (2000); *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . . Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484. The Court determines that this standard is not met because reasonable jurists could not find it debatable that the majority of Smith's claims are procedurally defaulted, as determined in this Opinion, and that he has waived his right to recourse with respect to these claims under § 2255.

Similarly, with regard to a decision on the merits of a claim, to warrant a grant of a COA, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. To the extent that Smith's claims would be rejected on the merits, the Court holds that reasonable jurists could not find this Court's assessment of the claims debatable or wrong.

Therefore, the Court denies Smith a certificate of appealability as to each issue presented.

## V. CONCLUSION

For the reasons stated, Smith's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt 142) is denied. Smith's motion for leave to conduct discovery (Dkt 144), his motion for leave to expand the record (Dkt 145), his Motion Requesting a Court Order Directing Former Counsel to Produce Items to Pro Se Litigant, for Cause Shown (Dkt 160), and his Motion

for Partial Summary Judgment (Dkt 161) are denied.  A certificate of appealability is also denied as to each issue presented.

An Order will be entered consistent with this Opinion.


DATED: December 19, 2012          /s/ Janet T. Neff_____
                                  JANET T. NEFF
                                  United States District Judge